The next case is number 06-5032, Fleetboston Financial v. United States Good morning, Your Honor. My name is John Brown. I represent the appellant. In this case, Bank Boston Corporation sued for a refund of overpaid interest with respect to tax deficiencies for the years 1984 and 1985. The dispute relates to how those overpayments affect the computation of the interest that Bank Boston paid. The controlling statute is section 6601, which imposes interest on a taxpayer in circumstances where a tax is both due and unpaid. This case does not involve in any respect overpayment interest charged against the government under a different statute, section 6611. That's not an issue in this case. Here, the tax deficiencies for 1984 and 1985 were eliminated by lost carrybacks, largely from 1990. But under the accepted interpretation of 6601, Bank Boston nevertheless was charged interest because it had the use of money, represented by the tax, that was owed to the government for the period from 84 and 85 through the date of the loss year, 1990. It's the reverse application of the same principle that Bank Boston asserts, which is we had overpayments for 1984 and 1985. And under the use of money principle, we don't owe interest to the government to that extent because the tax is already paid. You talk about this use of money principle. Don't the statutes govern? I mean, you elected to take these overpayments and apply them as credit to the following year. So they're gone, aren't they? No, Your Honor. The question is, for what purpose were they transferred? When they were transferred to the next succeeding year, the 1984 credit elect was not needed in 1984. It was not needed in 1985. The record shows that through 1990, the overpayments in Bank Boston's accounts always exceeded the credit elects from 1994 and 1990. Indeed, those credit elects in 1984 were $665,000. In 1985, $3.2 million. In 1986, $3.4 million. You're telling us there were carryovers from year to year because the total overpayment was in excess of what you needed to meet deficiencies in subsequent years? It was less than the total deficiency, but it was a substantial part of the deficiency. And we're saying to that extent, we do not owe interest to the government because we had overpayments, both which had their origin in the deficiency years and payments in later years, which offset the tax. Remember now, when we go back to 6601, that's a statute imposing a tax. The normal rule is when you're dealing with a statute imposing a tax, it's we both do, we concede that. And unpaid, we do not concede that. What about Treasury Reg 301, 6402-3? Once you've made this election, no interest shall be allowed in such portion of the overpayment credited, and such amount shall be applied as payment on account of the estimated tax. And then you've got statutes. This language for credit or overpayment shall be allowed for the tax within which the overpayment arises. I'm still not following where you are. We accept all of that in its place. All of that relates to overpayment interest. The best expression of it is in a district court's decision in Spunkmeyer. It said, look, 6513D cannot tell you when a tax is paid for purposes of 6601. 6513D transfers the payment from 1984 to 1985 to 1986. We have no quarrel with any of that. And we have no quarrel with the government doesn't owe us interest. We agree with that. What we're saying is that those overpayments, which are being held by the government on an interest-free basis, displace any deficiency until they are applied in satisfaction of a tax liability. Now, six courts before this court have come to that judgment. Six courts explicitly or implicitly said 6513D has nothing to do with this case. 6513D, if you look at it literally, it's incorporated for purposes of 6511, overpayment interest, and for purposes of suing for a refund of overpayment, except for the year to which the credit elect has been transferred. We have no quarrel with that. Indeed, all of those rules work properly. We received the money on a refund in 1990 without interest. They all worked. The point, though, is that for purposes of whether or not the deficiency was paid, those were unapplied funds. I think you can capture it. The essence of it is that payments without a liability don't have a period to which they're assigned. That's the essence of it. That's the question, isn't it? If you have a credit elect before you have a tax liability in the next year, then you have an account to which the credit elect has been assigned, but you don't have a liability yet. Your position, I take it, maybe this is not really a fair characterization of your position, but tell me if it's not. Your position is however much money total that you have on deposit in whatever accounts with the IRS, if that exceeds the total outstanding liability you have at any given moment, then regardless of which accounts that money is in, you cannot be accruing deficiency interest. Is that correct? That is correct. So you're basically saying within at least the IRS, you follow a general rule of netting out interest for purposes of deficiency interest. Not for purposes of overpayment interest, but for purposes of deficiency interest no matter where that money is parked, so to speak. We have no quarrel with the principle that the payment moved to 84 to 85, to use an example. And if there had been a liability, that's it. It can't cover a deficiency in 84 anymore. It is being applied to satisfy a liability. It's only in the circumstances where the funds are not needed to satisfy any outstanding liability. That was the case through 1990. And would this apply just in the context of payments by the corporation to satisfy present or future income tax, or would it apply to a variety of other payments in which you may have a credit with the government, for example? We have no attempt to expand it beyond the income tax. In other words, we're only claiming a credit against the same tax, not some other tax which would raise different questions. Yes, that's exactly what I'm asking. And my question is, how do you draw that line? Since you have this general principle of netting, why doesn't that principle apply outside of the income tax setting? I'm just saying that for purposes of this case, I don't need to take on the issue. Right, but we do, because if we say that there's a general principle of netting, somebody in the next case is going to say, well, how come that doesn't apply to me? In principle, it may well apply. There may be other considerations involved with different taxes. For purposes of this case, I would limit my assertions to it is applicable for purposes of the corporate income tax, and not seek to extend it to a motor fuel tax or some other tax. What's your answer to the government's position that whatever the logical or the equities of what you're saying, which perhaps are clear, the statutes don't permit going beyond the one-year credit? That is just wrong, because the 6513d, in Avon, the court said that it didn't find anything helpful in 6611, and the fact there is no regulation, there's a regulation that says we won't pay interest on an overpayment. There's no regulation, that was in 1978, there was no regulation in the Second Circuit's view in 1978 that said those payments nevertheless cannot be counted against a liability for purposes of deficiency interest. There was no regulation in 1978, and there's no regulation to this day that says that. They are correct in saying that 6513d transfers the payment to the next succeeding year, and that's true for purposes of suing for a refund, it's true for purposes of overpayment interest, it's true for all of the purposes they cited. It is not correct, so long as that payment is not applied, it is not correct that it no longer constitutes a payment for purposes of 6601. The government concedes here that the overpayments bar a deficiency for all of 1985, after all, the deficiency under the normal system, the normal rule is that you owe underpayment interest from the due date of the return from which there is a deficiency. The government concedes that we were overpaid when we filed our 1984 return on 31585. They concede that that bars payment through 31586, the year in which the 1985 return is filed. They simply say that, well, at that point, it becomes a payment for the next succeeding year, whether or not applied to any tax, it can no longer bar deficiency interest. Well, the conceded interpretation of 6601 is, who has the use of the money? If the government has the use of the money on an interest-free basis, which it does, there is no basis for charging deficiency interest. 6601. But for the year. For the year. They haven't conceded more than that year. Well, Spokemeyer said it applied until the refund, until the funds were applied or refunded. That was four years later. The bankruptcy court in Tennessee, for four or five years later. Every court that's looked at this, with the exception of the claims court in May, those cases involved suspension of interest until the funds were applied. But May didn't involve a subsequent year, did it? No, May— I thought there were only the two cases that involved— Sequent. Judge Kimball Wood in the Southern District of New York took an overpayment in 92 back to block deficiency interest in 91. That involved a subsequent year. And Vendel does in the bankruptcy court. And Spokemeyer in the Ninth Circuit, Judge Jenkins did. Tenth Circuit, I guess. In the Northern District of New York. Oh, that's Judge Jenkins in the Northern—OK, all right. And Sequent in the Southern District of New York, Judge Kimball Wood also took a carryback from 1992. The 1991 had become an overpayment in 1992, and she said that offset deficiency interest back to 1991. So it was an overpayment in a later year for that reason. I had reserved— Three minutes, and here we are. You can use some or all of it now, or— Well, I'd like to reserve it for rebuttal. All right, let's hear from the government. Ms. Tamami. May it please the Court, I'm Francesca Tamami, Counsel for the United States. From the outset, I would like to clarify that there is a regulation. Counsel was emphasizing that there's no regulation that says that the credit elect must be used in the way the government is using it. That there's no regulation that speaks to this question about deficiency interest. On the contrary, there is a regulation under 6402B. This is a regulation that has legislative effect because it was issued pursuant to Congress's direct authorization to the IRS to issue regulations governing the treatment of credit elects that says a credit elect shall become a payment of the succeeding year's tax. That resolves the issue in this case because if the credit elect becomes a payment pursuant to the regulation and also pursuant to 6513D, which was a statute enacted subsequent to the regulation, and as the Court of Claims acknowledged in Owens-Corning-Fiberglass was meant to embody this rule in the regulation, then that credit elect is a payment for the succeeding tax year and it is no longer a payment for the initial tax year and can no longer be used to stop the running of the deficiency interest. I have a question about that because I could see the logic, at least, of saying, well, as soon as you have this credit elect, boom, moves the money into the next year for purposes of deciding which accounts it is. But I take it that's not the approach you use. You don't say at the moment of the credit elect that money, at least when you're talking about one year and the next year, well, correct me if I'm wrong, but my understanding was you don't say that the moment you take that credit elect that the deficiency interest starts to run, right? You wait until that credit elect in the second year has to be used to pay tax, right? That's correct in this particular case because, as it turned out, the taxpayer had made sufficient estimated tax payments at the due date. Right, but so what? I mean, I thought the logic of your position was, from the regulation, your legal position would suggest that the moment that one makes this credit elect, then that money is no longer part of the funds that are applicable to year one. That money goes into year two, and therefore you look for purposes of deficiency interest only at year one. Why isn't that the logical position? And if that's not the position you follow, isn't there a problem with your reliance on the regulation? I think that is our position. I think you've correctly articulated it. The question of deficiency interest under section 6601 begins to run when the tax is both due and unpaid. If there's an outstanding credit elect that is not being used to satisfy a particular installment of estimated tax, then that credit elect is sort of suspended until, by operation of statute and regulation, it becomes a payment on account of the succeeding tax year. Suspended? I mean, let me ask the question this way. At the moment I take a credit elect, which results in a deficiency in year one, as it turns out, doesn't that deficient tax become due and unpaid at the moment I take the credit elect? Now, are you referring to the time that you file the initial year's return and you actually check the box? Yes. I think that was an issue in the cases that taxpayers referred to in Avon Products, May Department Stores. I think those cases address that question. Whether the election at the time you filed your return for the initial year, did that cause the payment to then move to the succeeding tax year? Right. And why not under your reasoning? Because, well, in those cases, first of all, the statute says it becomes a payment of the succeeding year's tax. The same statute, 6513B, says that estimated tax payments become a payment as of the due date of that succeeding year's return. I think there's a body of case law about estimated taxes and treating them as deposits versus taxes. There's sort of a general difference in the nature of an estimated tax from an actual payment of tax, and that gets into why the government doesn't have to pay overpayment interest on estimated taxes. When the succeeding year's return is filed, the taxpayer's liability to pay the tax reported on that return arises. So at that point, it makes sense to treat any estimated tax payments or credit elects as becoming a payment on that date. In previous cases, the government had tried to argue that payment moved out of the account before that, even though it turned out that, well, a quarter later, three months later, we used that payment to satisfy this particular installment of estimated tax. They're saying that the regulation also includes the word only, that it's only of the succeeding year's tax. And then if there's any further carryover, there would be a new credit elect. And if there were, then that would then be entitled to interest anyway. So you have to say neither can you have a new credit elect if you don't use it all or that the regulation says only and thereafter it just kind of sits there. It's ours. I think the regulation, I'm not exactly sure if it uses the term only, but it speaks in terms of... But you're saying that we have to read it as using the word only. Well, the regulation speaks only in terms of the succeeding year. Exactly. That's exactly the question, isn't it? Now what happens for the year after? And as to why you have to say the rules are different is where I'm having trouble. In the next year, according to the statute and according to the regulation, it becomes a payment on account of that year. It loses its character as a credit elect. If it's become a payment for the succeeding year, then the other rules that govern the treatment of overpayments apply to that, to the full payments made for the succeeding year. And if it's an overpayment, then they should be entitled to whatever interest they would be entitled to in the first year. Well, it doesn't matter, does it, if they're entitled to interest for each year in which the payment resides in the treasury without having been called up to pay the tax? Well, first of all, not all funds that are on account with the treasury are entitled to interest. That was one of the issues that tax payers... But they haven't argued that these are within that category of funds. Correct, but the issue in this case is whether the operation of the statute treating the credit elect as a payment for the succeeding year causes the initial year to become unpaid so that deficiency interest is now chargeable. Whether interest is chargeable on these credit elects is... It's not sequitur, isn't it? How does the payment of interest have anything to do with whether a deficiency is paid? I'm in agreement with you that the question of overpayment interest on the credit elects is a different question than deficiency interest. The government's position is that when the credit elect becomes a payment for the succeeding year, the initial year's tax becomes unpaid and deficiency interest is properly chargeable on the deficiency for that initial year. Why are we talking about deficiency interest? They want interest. They want interest in overpayment. And isn't he saying that when we transfer an overpayment from year one to cover deficiency in year two, that overpayment exceeds the amount of deficiency in year two, and therefore we're entitled to interest on it. Isn't that their point? Their issue in this case is a refund of deficiency interest that they've already paid. Essentially, I guess... They've had no deficiency. It wasn't... Or you're talking about the retroactive reassessment? If they're not claiming interest for that which they owed on the reassessment with the subsequent audit. When they initially filed their returns, they reported overpayments. It was determined subsequently that they had substantial deficiencies. That's why I, too, don't understand why you're treating it as if their payments were ever deficient. Because their payments actually were. Yes, but down the road. Correct, but a deficiency... And they're not claiming interest on the repayments which were used to remedy that ultimate deficiency level. Right, which they cannot do because they know the rules that you cannot ask for. Well, then I don't understand the emphasis on deficiency. The emphasis is on deficiency because we're looking at how much was paid for 1984 and 1985. In 1984, the taxpayer made payments of about $15 million. As far as their return reported for that year, they had an overpayment of $660,000 that they elected to credit to the next year. It was subsequently determined, and they agreed in the tax court, that they had a deficiency in their 1984 return of approximately $30 million. Most of that deficiency... The deficiency was offset by a carryback from 1990. The question in this case is to the extent that that $660,000 that they elected to credit to the next year, did that portion, was that ever unpaid? Was that always in that initial year to offset this $30 million deficiency that was subsequently determined? Under the statute and the Treasury regulation, that credit elect became a payment on account of the succeeding tax year. So that, indeed, their initial tax year was unpaid to the extent of $660,000 at the time that that amount was transferred to the next tax year, regardless of whether it was actually needed to pay the liability. The statute does not condition its application on whether the payment is actually needed. Have I answered your question? What is the precise language of the regulation on which you rest your argument that netting out this general principle of netting that your opposing counsel has suggested we follow is not permissible in this precise setting? The precise language, this is Treasury Regulation 301.6402-3A5. And at the end, actually, that provision, it says, it's the last sentence, if the taxpayer indicates on its return that all or part of the overpayment shown by its return is to be applied to its estimated income tax for its succeeding taxable year, then I'm skipping over a couple clauses that speak to some conditions. It says, such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof. The language of the regulations establishes that such amount shall be a payment of tax for the succeeding tax year. And the previous portion said no interest shall be allowed on such portion of the overpayment. Correct. Isn't that your position? Correct. And that's a point that I think the taxpayer has not disputed, that they are not entitled to any overpayment interest on that portion that is credited. But aren't those two separate questions? Whether there's overpayment interest paid, they're not arguing for. They just want the money to be treated as money in the hands of the IRS such that quite apart from any request on their part for actual interest, that they not be charged efficiency interest on some other obligation since they have a net positive account with you, vis-a-vis. I suppose in the facts of this case, there actually wasn't ever a net positive. But in any event, that this money is on deposit. Therefore, they're just looking for an avoidance of deficiency interest on corresponding funds. Now, I'm unclear as to exactly what that last clause says about that question as opposed to the question of overpayment interest. This is very clear with respect to overpayment interest. I have no doubt that it answers that question. What it doesn't seem to be nearly so clear about is answering the question of what do you do about a corresponding deficiency interest claim. What this speaks directly to in the government's opinion as the Court of Federal Claims held, is this speaks to when the tax for the initial year becomes unpaid. Everyone agrees that deficiency interest is properly chargeable when the tax is unpaid. Under this provision, the overpayment, the credit elect is treated as a payment on the subsequent year's tax account. In that case, it can no longer be a payment of the initial year's tax. So this speaks directly to the question of when the tax for the initial year becomes unpaid, such that deficiency interest under 6601 begins to run. Just one further question. But when it's a payment on account of the estimated income tax, that is, if I understood your answer earlier to one of my questions, that actually isn't a payment of tax due at that point, is it? Well, that relates to the question of timing. When does it become a payment on account of the next year's tax? As I mentioned before, estimated tax payments are treated as deposits. When the return is due for that next year, the liability to pay the tax arises. The estimated tax payments become actual tax payments. Credit elects become actual tax payments. And at that point, those payments cannot be used to offset a deficiency from the initial year. And it's at that point that the IRS has allowed the interest suspension. And it's at that point that under the code and the regulations, it's only up to that point that interest suspension can be permitted, because those amounts have now become a payment of tax for the succeeding year. They can no longer be used to offset the obligation for deficiency interest for the initial year. But that's not this issue, though, is it? When the credit elect is used for the succeeding year, then that's easy. The real question is, what about that which is left for the years thereafter? And why, and there it seems to be quite irrational, if in fact the taxpayer has a net balance with the government of more money than it owes at the time, and the first year has passed, why the rule should change? Our answer to that is that the plain language of the statute and the regulation do not condition their application on whether or not the credit elect is actually needed in that year. Well, that brings me back to my first question when we started. Do we have to read only into the regulation? Because it doesn't say what happens thereafter. I think the Court of Federal Claims handled the question very well. In its opinion, it explained that if the credit elect is not needed in the subsequent year, it becomes a payment on account of the tax for that year nevertheless, and then a new overpayment for that subsequent year springs to life. The taxpayer then has several options. It can ask for a refund of this new overpayment. It can elect to apply that overpayment to the succeeding year's return. It can do anything except get interest. Correct, but those are the rules that the taxpayer was aware of in making its estimated tax payments, in electing to treat overpayments as credit elects. So the taxpayer would have been better off asking for refunds instead of asking for the payments to be treated as credit elects, correct? Correct, or it could have reduced its estimated tax payments so that the credit elect would have actually been used in the succeeding year and kept its money in its own pocket rather than giving it to the government. Although, in the long run, you would not be well served by a practice of corporations asking for refunds instead of the credit elects, as I understand it, because you'd be out... Even assuming you lost this case, you'd still be better off with people taking credit elects rather than refunds, right? Most likely, the most efficient practice seems to be that if the taxpayer reports an overpayment on their return and chooses to treat it as a credit elect, it doesn't make a corresponding estimated tax payment for the same amount. It uses it immediately. Let me ask you this question, if I may. One quick question as to the point made by your opposing counsel that we have, I take it, two district court cases and two bankruptcy court decisions that deal with this, essentially the same legal issue here besides the Court of Federal Claims. So there are five cases out there. Is that correct as you read it? Is that the way the landscape looks? There are, although there are only two of those. I think there's Avon Products, there's the May Department Stores case, there's the CEQA case. Well, maybe I thought that didn't deal with the third year issue. Correct. In fact, only two of the cases the taxpayer has cited actually directly involve the issue that's present in this case. And those are? That was Inree Vandel Healthcare, the bankruptcy court case, and Otis Spunkmeyer, which is an unpublished opinion for the Northern District of California. The opinion in that case was issued after the briefing in this case was completed, so it wasn't considered by the parties or the court below. We think both of those cases are either distinguishable or wrongly decided. The Vandel Healthcare case did not cite the statute of the regulations at all. It relied wholesale on an unpublished opinion from the Southern District of New York in the CEQA case. Just real quickly, though, have you appealed either of those two cases? The government initially filed an appeal. That's the practice. They always do that, give the solicitor time, general time. As taxpayers noted in their brief, all of the cases were ultimately not appealed. I think the government's choice not to appeal a case is not reflective necessarily of our view of the merits of the case. And I know Otis Spunkmeyer was actually settled after it was appealed. Thank you, Mr. Bowman. Thank you. Mr. Brown. Interest is compensation for delay in payment. 6601 only charges interest if the tax is due and unpaid. If we go back to the patrolling language of the statute, due and unpaid, and interest is compensation for delay in payment. The government was paid. It was holding overpayments, and no one quarrels that they did not have to pay interest on those overpayments. As the claims court noted in the May case, interest suspension prevents a double benefit to the government. Interest-free overpayments and charging interest on a deficiency. That's a double detriment to the taxpayer. The regulation cited here, 64023, doesn't say anything about section 6601. What it is doing, its effect is to deprive the taxpayer of overpayment interest. It says that the overpayment from 84 is now an overpayment at 85, and you can't get any interest on it from 84. But what do you do with the last clause of that last sentence that your opposing counsel relied on? It shall be applied as a payment on account of the estimated income tax for such year or the installment thereof. That's for purposes of 6511 and overpayment interest. Well, how do we know that? I mean, it sounds pretty global to me. It sounds like it's saying that's the disposition of the... Well, but there's no tax liability to apply it to. Well, not yet, but there will be. There will be in 1990 when it's refunded. That's when there will be, because the case was it was never applied. But dealing with the language, it's not clear to me why that doesn't take it out of the account that we're focusing on. Your answer, I take it, is it doesn't matter which account it's in as long as it's in the government's hands. It doesn't matter what accounts it's in, and I agree with you, it does take it out of the account. It does for overpayment interest, for refund purposes interest, for all of those purposes, it's out of the account. It's just that it's still unapplied funds for purposes of section 6601. That statute says the tax has to be unpaid. And one other point, there are not five cases, there are six cases rejecting the government's view, and 6513D, its application was not only rejected in Spunkmire in the Federal District Court for the Northern District of California, it was also specifically rejected by Judge Kimball Wood in the Southern District of New York in Sequel. She said also in her opinion that she did not see where 6513D could change the result. Any more questions for Mr. Brown? Thank you, Mr. Brown. Thank you, Ms. Fitzhaber. The case is taken under submission.